NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 10, 2009[*]
Decided December 11, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 09-2654

| | |
|---|---|
| ANDREW SALES,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 08-cv-884-JPG |
| JOHN URANKAR and GATEWAY<br>AUTOMOTIVE GROUP,<br>    *Defendants-Appellees.* | J. Phil Gilbert,<br>*Judge*. |

**O R D E R**

Andrew Sales appeals the dismissal of his complaint under the Truth in Lending Act, 15 U.S.C. § 1601 et seq., alleging that a car dealership, Gateway Automotive Group, and one of its salespeople, John Urankar, violated the act when they arranged the financing for a truck he bought from them. The district court dismissed the complaint for failing to state a claim under TILA. We affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

The complaint alleged the following relevant facts. Sales entered into a retail installment contract to buy a truck from Gateway, and Gateway assigned the contract to Credit Acceptance Corporation. But a few days later Gateway and Urankar told Sales that Credit Acceptance Corporation would not agree to the assignment. Gateway and Urankar informed Sales, however, that another company, Car Financial Services, had agreed to take the assignment. Based on this information, Sales entered into a second retail installment contract. Sales subsequently learned, however, that Credit Acceptance Corporation had never rejected the first contract, but instead had returned the contract to Gateway and Urankar at their behest. Sales thus claimed that Gateway and Urankar engaged in a "bait and switch" tactic and violated TILA by "changing the terms" of the first retail installment contract.

The nature of Sale's bait-and-switch claim is clarified in his subsequent filings (to the district court and this court). He suggests that Gateway and Urankar deceived him—in violation of TILA—by conditioning financing of the second contract on his agreeing to a "service contract" (referred to in the district court as an "extended warranty") that cost an additional $ 1,295.

The district court dismissed the complaint. The court found that Sales did not allege that Urankar was a creditor for purposes of the act with regard to the retail installment contract, and that Sales could not identify any information required by TILA that Gateway failed to disclose.

On appeal Sales renews his argument that the defendants violated TILA by forcing him to buy a service contract/extended warranty in order to obtain financing. In support he cites two cases where car dealers allegedly required the purchase of insurance products and/or a service contract as a condition of financing, *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060 (11th Cir. 2004), and *Brugger v. KIA*, No. 01 C 1860, 2001 WL 845472 (N.D. Ill. 2001) (unpublished order).

But neither of these cases stands for the proposition that coupling a service contract/extended warranty with a financing agreement violates TILA. Although both *Bragg* and *Brugger* involved financing that was conditioned upon the inclusion of insurance products or service contracts, the alleged TILA violations in those cases stemmed from the insurance products and service contracts not being included as part of the "finance charge" in the TILA disclosures. *Bragg*, 374 F.3d at 1063; *Brugger*, 2001 WL 845472, at *2. Sales has not identified any information required by TILA that defendants failed to disclose.

Accordingly, the judgment is affirmed.